UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE: | ) CHAPTER 13 |
| | ) |
| JOHN DURRELL STREETER, | ) CASE NO. 07-71190-JB |
| | ) |
| | ) |
| Debtor. | ) |

### NOTICE OF PARTY IDENTIFICATION

Comes now RoundPoint Mortgage Servicing Corporation (hereinafter, "RoundPoint"), as servicer for the Federal Deposit Insurance Corporation (hereinafter, the "FDIC"), as receiver for Colonial BancGroup (hereinafter, "Colonial Bank"), owner of Taylor, Bean & Whitaker Mortgage Company (hereinafter, "TBW"), a secured creditor of the above-named Debtor, (hereinafter, collectively, as Movant) and respectfully seeks to address the questions of the Court pursuant to the March 11, 2010 Order (Doc. No. 84).

The FDIC as Receiver for Colonial Bank is the current owner of the Subject loan and a secured creditor of the Debtor pursuant to a certain first mortgage Note in the original principle amount of $116,176.00 as secured by a Deed to Secure Debt, both dated October 20, 2006, regarding the property located at 5610 Hampton Court, Atlanta, GA 30349 (the "Subject Property"). A true and accurate copy of the relevant Note is attached hereto as <u>Exhibit "A"</u>. Attached with the October 20, 2006 Note is a Blanket Power of

Attorney. The original Note is in the possession of the FDIC as Receiver for Colonial Bank. Thus, under Georgia law, the FDIC is the holder of the Note as it is possession of the bearer paper. O.C.G.A. § 11-1-201(20). *Salahat v. F.D.I.C.*, 298 Ga. App. 624, 628 (2009).

The loan is secured by a certain Deed to Secure Debt (hereafter, the "Security Deed") executed by the Debtor, also dated August 18, 2003 originally conveying the Subject Property to Home America Mortgage, Inc. (hereinafter, "HAM") as Lender and Grantee and Mortgage Electronic Registration Systems, Inc. (hereafter, "MERS") as nominee for Lender and Lender's successors and assigns (and mortgagee of record). Said Deed to Secure Debt is recorded in Deed Book 35788, page 524, Fulton County, Georgia Records. A true and correct copy of the Security Deed is attached hereto as <u>Exhibit "B"</u> and incorporated herein by this reference. The assignment of the Security Deed from the original Grantee to the current Investor was conducted through the MERS system. As previously established, MERS is the nominee of HAM and HAM's successors and assignees, including the FDIC as Receiver for Colonial Bank.

Specifically, MERS is a private company created by the mortgage banking industry for the purpose of establishing a centralized, electronic system for registering the assignments and sales of residential mortgages, with the goal of being the

2

elimination of costly paperwork every time a mortgage loan is sold. Positive authority is abundant supporting not only the MERS process of transferring assignments, but also foreclosing in the name of MERS. Trent v. MERS, 2008 WL 2697208 (11th Cir. 2008) (positive treatment of MERS process); MERS v. Revoredo, 955 So.2d 33 (Fla. App. 3 Dist. 2007) ("this decision is in accord with the clear majority of cases which have considered the question of MERS's standing to maintain mortgage foreclosure proceedings"); Morgera v. Countrywide Home Loans, Inc., 2010 WL 160348 (E.D. Cal. Jan. 11, 2010) (citing Trent for the proposition that MERS does have standing to foreclose as the nominee of the lender and thus tacitly approving of the MERS assignment process in *toto*); Jackson v. MERS, 770 N.W.2d 487 (S. Ct. Minn.) (holding that mortgage transfers between MERS members need not be recorded before a mortgage can be foreclosed).

The subject loan relevant to the Note and Security Deed is currently being serviced by RoundPoint for the FDIC, in its capacity as receiver for Colonial Bank.

Finally, an authorized agent for the FDIC as Receiver of Colonial Bank with respect to the Subject loan is Lawrence McCrief ("McCrief"). McCrief is the Post-closing Asset Manager for the FDIC as Receiver of Colonial Bank and holds a limited Power of Attorney providing McCrief with broad authority to conduct business

3

on behalf of the Receivership. McCrief can be contacted at the address of 102 W. Pineloch Ave., Suite 18, Orlando, FL 32806.

Respectfully submitted this 15th day of April, 2010.

        MCCURDY AND CANDLER, L.L.C.

By:    /s/*John D. Andrle*
     Frank R. Olson
     Georgia Bar No. 553077
     John D. Andrle
     Georgia Bar No. 488330
     Attorneys for FDIC as Receiver
      for Colonial Bank

250 E. Ponce de Leon Ave.
Suite 600
Decatur, GA 30030
(404) 373-1612
(404) 373-2471 (fax)
jandrle@mccurdycandler.com

# NOTE

FHA CASE NO.
105-1466052

August 18, 2003
[Date]

**5610 HAMPTON COURT**
**Atlanta, GA 30349**
[Property Address]

1. **PARTIES**

   "Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means Home America Mortgage, Inc.

   and its successors and assigns.

2. **BORROWER'S PROMISE TO PAY; INTEREST**

   In return for a loan received from Lender, Borrower promises to pay the principal sum of One Hundred Sixteen Thousand One Hundred Seventy Six and no/100 Dollars (U.S. $ 116,176.00 ), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of Six and Three Quarters percent ( 6.7500 %) per year until the full amount of principal has been paid.

3. **PROMISE TO PAY SECURED**

   Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

4. **MANNER OF PAYMENT**

   (A) Time

   Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on October 01, 2003. Any principal and interest remaining on the first day of September 2033 will be due on that date, which is called the "Maturity Date."

   (B) Place

   Payment shall be made at Home America Mortgage, Inc., 101 NE 2nd Street, Ocala, FL 34470-6642

   or at such other place as Lender may designate in writing by notice to Borrower.

   (C) Amount

   Each monthly payment of principal and interest will be in the amount of U.S. $ 753.52. This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.

MULTISTATE FHA FIXED RATE NOTE                                                                                                          6/96
                                                                                                                                   GREATLAND
ITEM T643253 (9604E)                               (Page 1 of 3 pages)                          To Order Call: 1-800-530-9393  Fax: 616-791-1131

**\*023154454233\***

*023154454233*

Exhibit A

(D) Allonge to this Note for Payment Adjustments

If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note. (Check applicable box.)

☐ Growing Equity Allonge     ☐ Graduated Payment Allonge

☐ Other (specify)

5. BORROWER'S RIGHT TO PREPAY

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

6. BORROWER'S FAILURE TO PAY

(A) Late Charge for Overdue Payments

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of Four percent ( 4%) of the overdue amount of each payment.

(B) Default

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

(C) Payment of Costs and Expenses

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

7. WAIVERS

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 through 3 of this Note.

_____ (Seal)  _____ (Seal)
JOHN STREETER                  -Borrower                                 -Borrower

_____ (Seal)  _____ (Seal)
                               -Borrower                                 -Borrower

_____ (Seal)  _____ (Seal)
                               -Borrower                                 -Borrower

(Sign Original Only)

Without recourse, pay to the order of
Taylor, Bean & Whitaker Mortgage Corp.

By: Home America Mortgage, Inc.

_____

Attorney-In-Fact       Erla Carter-Shaw

Without recourse, pay to the order of

By: Taylor, Bean & Whitaker
    Mortgage Corp.

_____
Erla Carter-Shaw, Vice President

Prepared by and Return to

TAYLOR, BEAN & WHITAKER MORTGAGE CORP
1417 North Magnolia Avenue
Ocala, Florida 34475

## BLANKET POWER OF ATTORNEY

KNOW ALL BY THESE PRESENTS: That HOME AMERICA MORTGAGE, INC. (the "Seller"), a FLORIDA corporation, through the duly authorized representative whose signature appears below, makes and appoints and by the Blanket Power of Attorney does make, constitute and appoint TAYLOR, BEAN & WHITAKER MORTGAGE CORP., hereinafter referred to as "TBW", a Florida corporation, the true and lawful attorney-in-fact for the Seller, and in all documents for the purpose of assigning and transferring to TBW, any and all mortgages, deeds of trust, security instruments, and the related notes, including, but not limited to the assignments of mortgages, deeds of trust and security instruments, the note endorsements, affidavit and agreements, for any mortgage loan transaction closed and funded in the Seller's name and committed to TBW, under that certain Loan Purchase Agreement between the Seller and TBW as such has been and is amended from time to time (the "Agreement") giving and granting unto the said attorney-in-fact full power and authority to do and perform all and every act and thing whatsoever requisite and necessary to be done, and to make, correct, amend, endorse, accept, or deliver all agreements and instruments, as fully, to all intents and purposes, as the Seller might or could do if present at the doing thereof through one of its authorized representatives, with full power of substitution and revocation. The Seller hereby ratifies and confirms all that the said attorney-in-fact shall lawfully do or cause to be done by virtue of this Blanket Power of Attorney.

The Seller may only revoke this Blanket Power of Attorney in writing and only upon the expiration of one hundred eighty (180) days from the effective date of the Agreement's termination in accordance with the Agreement's terms, and this Blanket Power of Attorney shall be deemed to be a power coupled with an interest for such purpose.

IN WITNESS WHEREOF, the undersigned has hereunto executed this document on the 19th day of February, 20 01.

Signed, sealed and delivered
in the presence of:

Witness
DESIREE BROWN
Witness Printed Name

Witness
MELISSA LONG
Witness Printed Name

Officer's Signature
GARY GARRETT, PRESIDENT
Printed Officer's Name and Title

Corporate Address: 101 NE 2nd Street
Ocala, FL 34470-6642

State of Florida
County of Marion

On this 19th day of February, 20 01, before me, a notary public, in and for the county and state aforesaid, personally appeared Gary Garrett, who is personally known to me to be the President of Home America Mortgage, Inc. and who executed the foregoing instrument in behalf of said corporation by authority of its by-laws or a Resolution of its Board of Directors.

Notary Public
Desiree Brown
Printed Notary's Name

My Commission Expires:

OFFICIAL NOTARY SEAL
DESIREE G BROWN
COMMISSION NUMBER
CC750186
MY COMMISSION EXPIRES
JULY 5, 2002

(seal)

TBW Power of Attorney-Blanket

Deed Book 35788 Pg 524
Filed and Recorded Aug-21-2003 09:30am
2003-0285475
Georgia Intangible Tax Paid $349.50
Juanita Hicks
Clerk of Superior Court
Fulton County, Georgia

03-22274
MILLER & GAINES, P.C
1590 Phoenix Blvd., Suite 100
Atlanta, GA 30349

After Recording Return To:
MILLER & GAINES
1590 PHOENIX BLVD., STE 100
ATLANTA, GA 30349

―――――――――――――――― [Space Above This Line For Recording Data] ――――――――――――――――

## SECURITY DEED

THIS IS A PURCHASE MONEY SECURITY DEED
MIN: 100029500004542332

FHA CASE NO.
105-1466052

THIS SECURITY DEED ("Security Instrument") is given on **August 18, 2003**
The grantor is **JOHN STREETER, As A Single Man**

("Borrower"). This Security Instrument is given to Mortgage Electronic Registration Systems, Inc. ("MERS") (solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns), as beneficiary. MERS is organized and existing under the laws of Delaware and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS. **Home America Mortgage, Inc.**

("Lender") is organized and existing under the laws of **FL**, and has an address of **101 NE 2nd Street, Ocala, FL 34470-6642**

Borrower owes Lender the principal sum of **One Hundred Sixteen Thousand One Hundred Seventy Six and no/100** Dollars (U.S. $ **116,176.00** ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on **September 01, 2033**.
This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS, with power of sale, the following described property located in **Fulton** County, Georgia:

see attached

GEORGIA FHA SECURITY DEED
ITEM T9704L1 (0205)— MERS     (Page 1 of 7 pages)

6/96
GREATLAND ■
To Order Call: 1-800-530-9393 □ Fax: 616-791-1131

**\*024287454233\***

*024287454233*

Exhibit B

Deed Book 35788 Pg 525

which has the address of **5610 HAMPTON COURT**
[Street]

**Atlanta**   Georgia   **30349**   ("Property Address");
[City]   [Zip Code]

TO HAVE AND TO HOLD this property unto MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

2. **Monthly Payment of Taxes, Insurance, and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. §2601 et seq. and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

3. **Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

FIRST, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

SECOND, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

THIRD, to interest due under the Note;

GEORGIA FHA SECURITY DEED

GREATLAND ■
ITEM T9704L2 (0208)— MERS   (Page 2 of 7 pages)   To Order Call: 1-800-530-9393 ☐ Fax: 616-791-1131

Deed Book 35788 Pg 526

FOURTH, to amortization of the principal of the Note; and

FIFTH, to late charges due under the Note.

4. **Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

5. **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

6. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

7. **Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement at the Note rate, and at the option of Lender shall be immediately due and payable.

GEORGIA FHA SECURITY DEED

ITEM T9704L3 (0205)— MERS                 (Page 3 of 7 pages)                 GREATLAND ■
To Order Call: 1-800-530-9393 □ Fax: 616-791-1131

Deed Book 35788 Pg 527

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

8. **Fees.** Lender may collect fees and charges authorized by the Secretary.

9. **Grounds for Acceleration of Debt.**

    (a) **Default.** Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

    (i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

    (ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

    (b) **Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

    (i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

    (ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property, but his or her credit has not been approved in accordance with the requirements of the Secretary.

    (c) **No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

    (d) **Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

    (e) **Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within _____ from the date hereof, Lender may, at its option require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to _____ from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

10. **Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

11. **Borrower Not Released; Forbearance by Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

GEORGIA FHA SECURITY DEED

ITEM T9704L4 (0205)— MFRS    (Page 4 of 7 pages)    GREATLAND ■
To Order Call: 1-800-530-9393 □ Fax: 616-791-1131

Deed Book 35788 Pg 528

12. **Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

13. **Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

14. **Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

15. **Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

16. **Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

17. **Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

GEORGIA FHA SECURITY DEED

ITEM T9704L5 (0208)—MERS    (Page 5 of 7 pages)    GREATLAND ■
To Order Call: 1-800-530-9393 ☐ Fax: 616-791-1131

Deed Book 35788 Pg 529

**18. Foreclosure Procedure.** If Lender requires immediate payment in full under paragraph 9, Lender may invoke the power of sale granted by Borrower and any other remedies permitted by applicable law. Borrower appoints Lender the agent and attorney-in-fact for Borrower to exercise the power of sale. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give a copy of a notice of sale by public advertisement for the time and in the manner prescribed by applicable law. Lender, without further demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Lender determines. Lender or its designee may purchase the Property at any sale.

Lender shall convey to the purchaser indefeasible title to the Property, and Borrower hereby appoints Lender Borrower's agent and attorney-in-fact to make such conveyance. The recitals in the Lender's deed shall be prima facie evidence of the truth of the statements made therein. Borrower covenants and agrees that Lender shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorney's fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. The power and agency granted are coupled with an interest, are irrevocable by death or otherwise and are cumulative to the remedies for collection of debt as provided by applicable law.

If the Property is sold pursuant to this paragraph 18, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at the sale. If possession is not surrendered, Borrower or such person shall be a tenant holding over and may be dispossessed in accordance with applicable law.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this paragraph 18 or applicable law.

**19. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under applicable law.

**20. Waivers of Homestead.** Borrower waives all rights of homestead exemption in the Property.

**21. Assumption Not a Novation.** Lender's acceptance of an assumption of the obligations of this Security Instrument and the Note, and any release of Borrower in connection therewith, shall not constitute a novation.

**22. Security Deed.** This conveyance is to be construed under the existing laws of the State of Georgia as a deed passing title, and not as a mortgage, and is intended to secure the payment of all sums secured hereby.

**23. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.
[Check applicable box(es)].

| | | |
|---|---|---|
| ☐ Condominium Rider | ☐ Graduated Payment Rider | ☐ Growing Equity Rider |
| ☐ Planned Unit Development Rider | ☐ Adjustable Rate Rider | ☐ Rehabilitation Loan Rider |
| ☐ Non-Owner Occupancy Rider | ☒ Other [Specify] WAIVER OF BORROWERS RIGHTS AND CLOSING ATTORNEYS AFFIDAVIT | |

GEORGIA FHA SECURITY DEED

ITEM T9704L6 (0205)—MERS    (Page 6 of 7 pages)    GREATLAND ■
To Order Call: 1-800-530-9393 □ Fax: 616-791-1131

Deed Book 35788 Pg 530

BORROWER ACCEPTS AND AGREES to the terms contained in pages 1 through 7 of this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

IN WITNESS WHEREOF, Borrower has signed and sealed this Security Instrument.

Signed, sealed and delivered in the presence of:

_____   _____*John Streeter*_____ (Seal)
Unofficial Witness                                    JOHN STREETER                      -Borrower

*Beverly B Pannell*

Notary Public, Douglas County

My commission expires: FEB 13 2005

[Notary Seal: BEVERLY B. PANNELL, DOUGLAS COUNTY, GEORGIA, NOTARY PUBLIC]

_____ (Seal)
                                                       -Borrower

_____ (Seal)
                                                       -Borrower

_____ (Seal)
                                                       -Borrower

_____ (Seal)
                                                       -Borrower

_____ (Seal)
                                                       -Borrower

GEORGIA FHA SECURITY DEED

ITEM 19704L7 (0305)— MERS        (Page 7 of 7 pages)        GREATLAND
                                                                                            To Order Call: 1-800-530-9393 Fax: 616-791-1131

Deed Book 35788 Pg 531

### EXHIBIT "A"

All that tract or parcel of land lying and being situate in Land Lot 99, of the 13th District, Fulton County, Georgia, being Lot 35 of Burdett Ridge Subdivision, Unit IV, as shown on Plat recorded in Plat Book 199, Page 78, Fulton County Records, Georgia, which plat is incorporated herein by reference for a more complete description.

03-22274

Deed Book 35788 Pg 532

GEORGIA- FHA

GRANTOR: JOHN STREETER

LENDER: Home America Mortgage, Inc.

DATE OF SECURITY DEED : 8/18/2003

LOAN NUMBER: 454233

### WAIVER OF BORROWER'S RIGHTS

BY EXECUTION OF THIS PARAGRAPH, GRANTOR EXPRESSLY:(1) ACKNOWLEDGES THE RIGHT TO ACCELERATE THE DEBT AND THE POWER OF ATTORNEY GIVEN HEREIN TO LENDER TO SELL THE PREMISES BY NONJUDICIAL FORECLOSURE UPON DEFAULT BY GRANTOR WITHOUT ANY NOTICE OTHER THAN SUCH NOTICE AS IS REQUIRED TO BE GIVEN UNDER THE PROVISION OF THE PARAGRAPH 17 HEREOF; (2) WAIVES ANY AND ALL RIGHTS WHICH GRANTOR MAY HAVE UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES, THE VARIOUS PROVISIONS OF THE CONSTITUTION FOR THE SEVERAL STATES, OR BY REASON OF ANY OTHER APPLICABLE LAW TO NOTICE AND TO JUDICIAL HEARING PRIOR TO THE EXERCISE BY LENDER OF ANY RIGHT OR REMEDY HEREIN PROVIDED TO LENDER, EXCEPT SUCH NOTICE AS IS SPECIFICALLY REQUIRED TO BE PROVIDED IN PARAGRAPH 17 HERREOF; (3) ACKNOWLEDGES THAT GRANTOR HAS READ THIS DEED AND SPECIFICALLY THIS PARAGRAPH AND PARAGRAPH 17 OF THIS DEED AND ANY ALL QUESTIONS REGARDING LEGAL EFFECT OF SAID DEED AND ITS PROVISIONS HAVE BEEN EXPLAINED FULLY TO GRANTOR HAS BEEN AFFORDED AN OPPORTUNITY TO CONSULT WITH COUNSEL OF GRANTOR'S CHOICE PRIOR TO EXECUTING THIS DEED; (4) ACKNOWLEDGES THAT ALL WAIVERS OF THE AFORESAID RIGHTS OF GRANTOR HAVE BEEN MADE KNOWINGLY, INTENTIONALLY AND WILLINGLYBY GRANTOR AS PART OF A BARGAINED FOR LOAN TRANSACTION; AND (5) AGREES THAT THE PROVISIONS HEREOF ARE INCORPORATED INTO AND MADE A PART OF THE SECURITY DEED.

O.C.G.A. SECTION 7-1-1014 (3) REQUIRES THAT WE INFORM YOU THAT IF YOU FAIL TO MEET ANY CONDITION OR TERM OF THE DOCUMENTS THAT YOU SIGN IN CONNECTION WITH OBTAINING A MORTGAGE LOAN YOU MAY LOSE THE PROPERTY THAT SERVES AS COLLATERAL FOR THE MORTGAGE LOAN THROUGH FORCLOSURE.

READ AND AGREED BY GRANTOR:

Signed, Sealed and delivered
in the presence of:

_[signature]_

_[signature]_
NOTARY PUBLIC

_[Notary seal: BEVERLY B. PANNELL, FEB 13 2005, DOUGLAS COUNTY, GEORGIA]_

_[signature]_ (Seal)
JOHN STREETER          Grantor
_____ (Seal)
                       Grantor
_____ (Seal)
                       Grantor
_____ (Seal)
                       Grantor
_____ (Seal)
                       Grantor
_____ (Seal)
                       Grantor

C0018L0

Deed Book 35788 Pg 533
Juanita Hicks
Clerk of Superior Court
Fulton County, Georgia

## CLOSING ATTORNEY'S AFFIDAVIT

RE: Borrower(s): **JOHN STREETER**

Lender: **Home America Mortgage, Inc.**

Date: **8/18/2003**

Before the undersigned attesting officer personally appeared the undersigned closing attorney or agent, who having been the first duly sworn according to law states under oath as follows:

In closing the above loan, but prior to the execution of the Deed to Secure Debt and "Acknowledgement and Waiver of Borrower's Rights" by the Borrower(s), a representative of the firm reviewed with and explained to the Borrower(s) the term and provisions of the Deed to Secure Debt and particularly the provisions thereof, thereof authorizing the Lender to sell the secured property by a non-judicial foreclosure under a power of sale, together with the "Acknowledgement and Waiver of Borrower's Rights" and informed the Borrower(s) of Borrower's rights under the Constitution of the State of Georgia and the Constitution of the United States to notice and a judicial hearing prior to such foreclosures in the absence of a knowing, intentional and willing contractual waiver by Borrower(s) of Borrower's rights. After said review with an explanation to Borrower(s), Borrower(s) executed the Deed to Secure Debt and "Acknowledgement and Waiver of Borrower's Rights.

Based on said review and explanation to the Borrower(s), it is the opinion of the firm that the Borrower(s) knowingly, intentionally and willingly executed the waiver of the Borrower's constitutional rights to notice and judicial hearing prior to any such nonjudicial foreclosure.

_____
Closing Attorney

Sworn and subscribed before me
this **August 18, 2003**

_____
Notary Public

[Notary Seal: Beverly B. Pannell, Commission Expires Feb 13 2005, Douglas County, Georgia Notary Public]

C0016L0

**CERTIFICATE OF SERVICE**

The undersigned certifies that the within and foregoing Answer was filed electronically with the Clerk of Court, automatically sending electronic mail notice to the parties below, with a paper copy addressed to the following:

> Howard B. Brown
> Bush & Miller, Attorney at Law, P.C.
> PO Box 492293
> Atlanta, GA 30349

> Mary Ida Townson
> Chapter 13 Trustee
> Suite 2700 Equitable Bldg.
> 100 Peachtree Street, NW
> Atlanta, GA 30303

This 15th day of April, 2010.

> MCCURDY AND CANDLER, L.L.C.
>
> By: /s/John D. Andrle
> Frank R. Olson
> Georgia Bar No. 553077
> John D. Andrle
> Georgia Bar No. 488330
> Attorneys for FDIC
>     as Receiver for Colonial Bank

250 E. Ponce de Leon Ave.
Suite 600
Decatur, GA 30030
(404) 373-1612
(404) 373-2471 (fax)
jandrle@mccurdycandler.com

5